**RECEIVED**

DEC 1 0 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| MARIO SAUCEDO, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| | ) **SA20CA1412 JKP** |
| ALPHA FACILITIES SOLUTIONS, LLC | ) |
| Defendant. | ) |

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Mario Saucedo ("PLAINTIFF"), through undersigned counsel, and files her Complaint and Demand for Jury Trial against Defendant, Alpha Facilities Solutions, LLC ("DEFENDANT"), and in support states as follows:

### NATURE OF THE CLAIMS

1. This is an action for monetary damages pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA") to redress DEFENDANT's unlawful employment practices against PLAINTIFF, including DEFENDANT's discrimination and retaliation against PLAINTIFF due to his disability and PLAINTIFF's requests for reasonable medical accommodations and retaliation for PLAINTIFF's lawful utilization of protected medical leave.

## JURISDICTION AND VENUE

2. This Court has jurisdiction herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of PLAINTIFF's civil rights under the ADA.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to PLAINTIFF's claim, occurred in this District.

## THE PARTIES

4. PLAINTIFF is a citizen of the United States, and is, and was at all times, material, a resident of the state of Texas, residing in Bexar County.

5. DEFENDANT is a domestic limited liability company whose primary place of business is San Antonio, Texas.

6. DEFENDANT does business in this judicial district and PLAINTIFF worked for DEFENDANT at its 11503 NW Military HWY, San Antonio, TX 78231 location.

7. DEFENDANT is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. PLAINTIFF has complied with all statutory prerequisites to filing this action.

9. On December 13, 2018, PLAINTIFF filed discrimination claims with the Equal Employment Opportunity Commission ("EEOC") against DEFENDANT, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e).

10. PLAINTIFF's discrimination charge was filed within the required amount of days after the alleged unlawful employment practices occurred.

11. On September 11, 2020, the EEOC issued to PLAINTIFF a Notice of Right to Sue, pertaining to DEFENDANT.

12. This Complaint was filed within ninety days of receipt of the EEOC's Right to Sue letter.

## FACTUAL ALLEGATIONS

13. PLAINTIFF is a disabled male.

14. At all times relevant to this action, PLAINTIFF was a qualified individual with a disability within the meaning of the ADA. PLAINTIFF has an actual disability, has a record of being disabled, and/or is perceived as being disabled by DEFENDANT.

15. On or about April 2015, PLAINTIFF was hired by DEFENDANT.

16. At the times relevant to the subject case, PLAINTIFF was a Systems Administrator for DEFENDANT.

17. On or about May 2018, PLAINTIFF had a flare up of his protected medical condition pertaining to his mental health.

18. On or about May 4, 2018, PLAINTIFF had a meeting with Katy Garcia (Owner), Keith Plummer (Director, at the time of meeting), and Steve Summeral (Director of IT) wherein he informed them that he would need protected medical leave for his mental health.

19. PLAINTIFF applied for and was granted protected medical leave.

20. PLAINTIFF's health care provider filled out the medical certification requesting that he be out 8 weeks from May 7, 2018, which is July 2, 2018, due to his disabilities.

21. While PLAINTIFF was out of on protected medical leave, Samantha Garcia, Human Resources & Office Manager, contacted PLAINTIFF several times. She made several threatening comments to PLAINTIFF including, informing him that he needed to return to work

to secure his job, stating, "I hope they are doing you a world of good because they are clearly not thinking about your livelihood," informing him that when his PTO ran out that he would have to pay his portion of his medical benefits, stating, "who knows if the doctors will administer care, maybe they will change their tune and stop providing medical care if [DEFENDANT] stopped paying PLAINTIFF's insurance premiums," and informing him that DEFENDANT was hiring a temporary employee into PLAINTIFF's position and that person "very well could become permanent."

22. On or about June 23, 2018, prior to the expiration of PLAINTIFF's requested leave time, he text messaged Mr. Plummer stating that he was excited to return to work on June 26, 2018.

23. The same day, on June 26, 2018, PLAINTIFF realized that his email access to his company email had been removed.

24. Two days later, on or about June 28, 2018, Ms. Garcia terminated PLAINTIFF's employment for job abandonment.

25. DEFENDANT's only contact with PLAINTIFF about returning to work were submitted through his company email account which PLAINTFF did not have access to.

26. On or about June 27, 2018, DEFENDANT offered to rehire PLAINTIFF but he was going to be put on a 6 month probationary period, he constituted a new hire, and his job duties were substantially decreased.

27. PLAINTIFF demanded that he be rehired with his previous tenure and DEFENDANT acquiesced but did not lift his probationary period.

28. PLAINTIFF made a second demand that his probationary period be lifted but Ms. Garcia told PLAINTIFF that DFENDANT refused to do so.

29. In that same meeting with Ms. Garcia told PLAINTIFF that DEFENDANT was, "doing a very generous thing offering him his job back," and "they want to trust him not to leave them again." She also asked PLAINTIFF what his "end game" was.

30. Upon his rehire, in early August, PLAINTIFF's access to information and assigned tasks had been greatly reduced.

31. PLAINTIFF inquired to Mr. Summeral why his tasks were removed due to being prescribed a security access tier that contained restrictions, and Mr. Summeral told PLAINTIFF, "There had been a break in trust, and [PLAINTIFF] would no longer have those privileges."

32. Prior to his leave, PLAINTIFF and Mr. Summeral discussed setting security tiers for different security access levels but it was unambiguously determined that both PLAINTIFF and Mr. Summeral would have the highest level of access.

33. Mr. Summeral told PLAINTIFF that he felt, "[PLAINTIFF] had broken DEFENDANT's trust. [Mr. Summeral] thought [they] were friends, and he was upset that PLAINTIFF did not respond to the voice message that he left."

34. Mr. Summeral continued to press PLAINTIFF about his leave stating, "You mean to say, that [PLAINTIFF] could not make a 30 second phone call but you manage to drive home everyday."

35. On or about October 15, 2018, Mr. Summeral harassed PLAINTIFF about his attendance by stating, "I am also getting really pissed off about your constant calling in. You need to get that (medical condition) under control. This is not acceptable." He continued to berate PLAINTIFF about calling in too late when PLAINTIFF drove past the office due to a flare-up of his medical condition. Mr. Summeral said, "you should know when you wake up that you are sick or not feeling well and notify me that you are not coming in."

36. Mr. Summeral made belittling comments to PLAINTIFF such as, "why is this still on your desk? That is the stupid way of doing it."

37. PLAINTIFF was subjected to increased scrutiny and general disrespect which led to an exacerbation in his medical condition.

38. DEFENDANT's treatment of PLAINTIFF after his returned caused significant adverse effects to his mental health.

39. PLAINTIFF's mental health began to deteriorate after returning to work and being discriminated against in the workplace.

40. DEFENDANT's discrimination of PLAINTIFF following his return to work, and the adverse effects to his mental health left him with no choice but to separate his employment.

41. On or about February 5, 2019, PLAINTIFF's employment ended with DEFENDANT.

42. PLAINTIFF has been damaged by DEFENDANT's illegal conduct.

43. PLAINTIFF has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I: Disability Based Discrimination in Violation of the ADA

44. PLAINTIFF re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

45. At all times relevant to this action, PLAINTIFF was a qualified individual who had a disability within the meaning of the ADA. PLAINTIFF has an actual disability, has a record of being disabled, and/or was perceived as being disabled by DEFENDANT.

46. PLAINTIFF was always able to perform the essential functions of his job during his employment with DEFENDANT, with the exception of the time he was out on leave.

47. DEFENDANT is prohibited under the ADA from discriminating against PLAINTIFF because of PLAINTIFF's disability regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

48. DEFENDANT violated the ADA by removing PLAINTIFF's duties, restricting his access, placing him in unwarranted probation, harassing him, excessively scrutinizing him, patronizing comments about his condition, and otherwise discriminating against PLAINTIFF based on his disability.

49. PLAINTIFF has been damaged by DEFENDANT's illegal conduct.

50. DEFENDANT intentionally discriminated against PLAINTIFF based on PLAINTIFF's disability.

51. DEFENDANT's discriminatory conduct in violation of the ADA, has caused PLAINTIFF to suffer a loss of pay, benefits, and prestige.

52. DEFENDANT's actions have caused PLAINTIFF to suffer mental and emotional distress, entitling him to compensatory damages.

53. DEFENDANT has engaged in discriminatory practices with malice and reckless indifference to the PLAINTIFF's protected rights, thereby entitling her to punitive damages.

### Count II: Retaliation in Violation of the ADA

54. PLAINTIFF re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

55. DEFENDANT intentionally retaliated against PLAINTIFF for engaging in protected activity and by restricting his access, placing him in unwarranted probation, harassing him, making patronizing comments about his condition, and excessively scrutinizing him.

56. DEFENDANT's conduct violates the ADA.

57. DEFENDANT's discriminatory conduct, in violation of the ADA, has caused PLAINTIFF to suffer a loss of pay, benefits, and prestige.

58. DEFENDANT's actions have caused PLAINTIFF to suffer mental and emotional distress, entitling her to compensatory damages.

59. DEFENDANT has engaged in discriminatory practices with malice and reckless indifference to the PLAINTIFF's federally protected rights, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, requests this Honorable Court:

a) Enter judgment requiring DEFENDANT to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Grant PLAINTIFF costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

PLAINTIFF hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

/s/ Mario Saucedo
Mario Saucedo
3903 Barrington ST, Apt. 115,
San Antonio, Texas 78217
T: (210) 557-9975

Case 5:20-cv-01412-JKP-RBF Document 1-1 Filed 12/10/20 Page 9 of 15

MSaucedo35@gmail.com

*[signature]* 12-14-2020

*Filing Pro Se*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Antonio Field Office

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Antonio Direct Dial: (210) 640-7530
FAX (210) 281-2522
Website: www.eeoc.gov

Gabrielle Klepper
SPIELBERGER LAW GROUP
202 S. Hoover Blvd
Tampa, FL 33609

Re:  EEOC Charge: 451-2019-00813
     Charging Party: Mario Saucedo
     Respondent:     ALPHA FACILITIES SOLUTIONS

Dear Gabrielle Klepper:

    Thank you for the additional information you submitted in response to our preliminary assessment of the evidence. We want to assure you that all the evidence submitted by you and the employer has been considered in our review of your client's case.

    After review of the additional information you provided, it is our assessment that further investigation is unlikely to result in a violation of the statutes we enforce. As explained in our March 3, 2020 letter, the evidence indicates terminated for not returning to work when expected and then rehired when you decided to return. The available information does not support a conclusion that Retaliation were factors in your client's employment experiences. While we realize that you have firm views that the evidence supports your position your client was discriminated against, the final determination must comport with our interpretation of the available evidence and the laws we enforce.

    Accordingly, we decline to take further action on the charge. Please find enclosed **Dismissal and Notice of Rights** that represents a final determination by the U.S. Equal Employment Opportunity Commission (EEOC) and describes your client's right to pursue the matter by filing a lawsuit in federal court within ninety (90) days of receipt of the dismissal notice. If you or your client fail to file a lawsuit within the statutory ninety (90) day period following receipt of our dismissal notice, your client's right to sue in federal court will expire and cannot be restored by EEOC.

Sincerely,

Jose Colon-Franqui
Digitally signed by Jose Colon-Franqui
DN: cn=Jose Colon-Franqui, o=EEOC, ou=Equal Employment Opportunity Commission,
email=jose.colon.franqui@eeoc.gov, c=US
Date: 2020.09.10 11:30:21 -05'00'

9/11/2020
Date

Jose Colon-Franqui
Enforcement Supervisor

Enclosure: Dismissal and Notice of Rights
cc:

Mario Saucedo
9619 Don Trail
San Antonio, TX 78254

RECEIVED SEP 15 2020

SCANNED
SAFO DCL 2020
SEP 1 5 2020

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Mario Saucedo<br>9619 Don Trail<br>San Antonio, TX 78254 | From: | San Antonio Field Office<br>5410 Fredericksburg Rd<br>Suite 200<br>San Antonio, TX 78229 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 451-2019-00813 | Sybil Edwards,<br>Investigator | (210) 640-7563 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Jose Colon-Franqui FOR     9/11/2020

Travis G. Hicks,
Director

Enclosures(s)                                                (Date Mailed)

cc:  Samantha Garcia
     HR Director
     ALPHA FACILITIES SOLUTIONS, LLC
     11503 NW Military Hwy
     San Antonio, TX 78231

     Gabrielle Klepper
     SPIELBERGER LAW GROUP
     202 S. Hoover Blvd
     Tampa, FL 33609

RECEIVED SEP 1 5 2020

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at</u> http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence*

RECEIVED SEP 1 5 2020

*to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

*to establish disability.* For more information, consu[lt]
explanatory publications, available at http://www.eeoc.[gov]





US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN ANTONIO DISTRICT OFFICE
5410 FREDERICKSBURG ROAD SUITE 200
SAN ANTONIO, TX 78229-3555

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300